# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Leroy Edwards,

                   Plaintiff,       Case No. 1:19-cv-00339

v.                           Michael L. Brown
                                 United States District Judge

Publix Supermarkets, Inc.,

                   Defendant.

_____/

## OPINION & ORDER

Plaintiff Leroy Edwards claims Defendant Publix Supermarkets, Inc. fired him because of his race.  The Magistrate Judge recommends granting Defendant's motion for summary judgment. (Dkt. 82.)  Plaintiff objects to the Magistrate Judge's Report and Recommendation ("R&R"). (Dkt. 86.)  The Court overrules Plaintiff's objections and adopts the Magistrate Judge's R&R.

## I.    Background

Defendant employs drivers to deliver groceries to its stores.  Drivers often make more than one delivery in a day.  At the start of the day, drivers go to Defendant's dispatch office for their first delivery.  (Dkt. 55

at 37:1–23.)  Drivers may be able to select their first run from a list of possible runs that dispatch provides, with selection by seniority.  (*Id.*) After completing their first deliveries, drivers return to the dispatch office for additional deliveries, also called "second runs" or "return trips." Defendant has a policy — referred to as the "next-most-likely, on-time delivery policy" — that controls the assignment of these deliveries.  (*Id.* at 43:8–44:11.)  As part of this policy, the dispatcher assigns a delivery to a returning driver after considering the number of remaining deliveries for that day and the remaining hours that driver may work pursuant to Department of Transportation requirements.  (*Id.*)  The parties dispute whether drivers had any say in this process for second deliveries.  Plaintiff says drivers could choose them.  (Dkt. 64 at 54:6–9.) Defendant says dispatchers always made the decision.  (Dkt. 55 at 43:8– 44:11.)  Defendant, however, acknowledges its policy was loosely enforced for some period of time.  (*Id.*)

In early 2018, Defendant attempted to enforce its assignment policy more thoroughly.  (*Id.*)  As part of this, it placed a flier in its dispatch office to outline the requirements of the run-assignment policy.  (Dkts. 55 at 43:8–44:11; 122.)  Plaintiff claimed at summary judgment that he

never heard of this policy and never saw the flier in the dispatch office. (Dkt. 57-1 ¶¶ 14–18.)  But, as discussed below, the Magistrate Judge also properly found that Plaintiff had already admitted these facts by refusing to respond to Defendant's Request for Admissions.  (Dkt. 82 at 8 n.5.) Plaintiff insists that drivers were always allowed a choice on their second runs.  (*Id.*)

Plaintiff worked for Defendant for nearly thirty years.  (*See* Dkt. 64 at 16:3–12.)  He was well-liked.  (Dkt. 57-2 ¶ 3.)  In 2015, he had an accident while making a delivery.  (Dkt. 64 at 18:5–8.)  While driving near the interchange of Highway 285 and Georgia State Highway 400, a car clipped the wheel of the truck he was driving causing him to lose control.  (*Id.* at 18:16–22.)  His truck went over the highway divider and hit a tow truck.  (*Id.* at 19:2–4.)  He was injured and continues to suffer hip pain and symptoms of acute stress disorder.  (Dkt. 57-2 ¶ 4.)

Plaintiff eventually returned to work as a driver.  In April 2018, he went to the dispatch office for a second run.  A dispatcher assigned him a delivery that required him to drive near the site of his previous accident.  (Dkt. 64 at 44:13–48:1.)  Plaintiff told the dispatcher he felt uncomfortable driving in that area, and the dispatcher gave him a

different delivery.  (Dkt. 54 at 55:20–56:10, 61:8–10.)  The dispatcher then emailed a supervisor to ask whether he should do this again if Plaintiff made a similar request.  (*Id.*)  The supervisor told the dispatcher not to do so, as Defendant needed to enforce its run-assignment policy. (*Id.*)  Defendant claims this was the first time Plaintiff's supervisors learned Plaintiff did not want to drive near the scene of his prior accident. (*See* Dkts. 55 at 27:2–16; 50 at 22:13–22; 54 at 59:3–60:8.)  Defendant says they were previously aware.  (Dkt. 57-1 ¶ 23.)

Plaintiff later spoke with Shannon Horne, one of his supervisors. Defendant says Mr. Horne reminded Plaintiff of the need to follow the next-most-likely, on-time delivery policy.  (*See* Dkt. 50 at 25:3–25.) Plaintiff claims Mr. Horne asked him why he refused a run, and he told her he had not done so.  (Dkt. 64 at 48:2–24.)

In May 2018, Plaintiff came to the dispatch office to seek a second run.  (Dkt. 57-1 ¶ 25.)  The dispatcher assigned him a run near the 285/400 interchange.  (*Id.*)  Plaintiff claims it was the same route he had been allowed to avoid before.  (Dkt. 57-1 ¶ 25.)  Plaintiff told David Bullard, a lead person in dispatch, that he felt uncomfortable taking that run.  (Dkt. 53 at 36:4–37:6.)  Mr. Bullard called Charles Williams, the

head of the dispatch department. (*Id.*) Mr. Williams, Mr. Bullard, and Plaintiff spoke on the phone for half an hour. (Dkt. 55 at 58:19–60:19.) They talked about Plaintiff taking a different route to get to the store. (*Id.*) Plaintiff suggested taking a run that did not go near the 285/400 interchange. (*Id.*) Mr. Williams rejected that idea. Based on the conversation, Mr. Williams determined that Plaintiff refused to complete his assigned run: "Even when presented with multiple options, [Plaintiff] refused all options that were given to him to complete that trip." (*Id.* at 79:10–20.) Defendant fired Plaintiff the next day for insubordination. (Dkt. 57-1 ¶ 31.)

Plaintiff filed a claim with the Equal Employment Opportunity Commission, alleging he was fired because of his race. (Dkt. 45-3 at 130.) After that claim was denied, Plaintiff sued. (Dkt. 1.) Though he originally brought multiple claims, the only claim currently before the Court is his Title VII unlawful termination claim. *See* 42 U.S.C. § 2000e-2. The Magistrate Judge found that, although Plaintiff made a prima facie showing of unlawful termination, Defendant presented legitimate, nondiscriminatory reasons for firing Plaintiff (specifically, insubordination), and Plaintiff failed to show that reason was pretextual.

The Magistrate Judge recommends granting Defendant's motion for summary judgment.

## II.    Standard of Review

When a party objects to an R&R, the district court must review de novo any part of the Magistrate Judge's disposition that is the subject of a proper objection. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). If an objection fails to identify the specific findings or a specific basis for the objection, a court need not consider it. *See id.*

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might

6

affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A moving party meets this burden merely by " 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The movant, however, need not negate the other party's claim. *Id.* at 323. In determining whether the moving party has met this burden, a court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the movant has adequately supported its motion, the nonmoving party then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986).  Ultimately, there is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party.  *Id.*  But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247–48.  The court, however, resolves all reasonable doubts in the favor of the non-movant.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## III.  Plaintiff's Objections to the Magistrate Judge's Factual Findings

Plaintiff makes four objections to the Magistrate Judge's statement of the facts.  First, the Magistrate Judge found that Plaintiff's supervisors were unaware before April 2018 that Plaintiff did not want to drive near the scene of his prior accident.  (Dkt. 82 at 9.)  The Magistrate Judge cited deposition testimony in which Plaintiff's supervisors (Charles Williams, Shannon Horne, and Leonard Harris) testified the April 2018 incident was the first time they learned Plaintiff had concerns about driving over the 285/400 interchange.  (Dkts. 50 at 22:23–23:2; 54 at 60:4–8; 55:27:14–16.) Plaintiff claims his supervisors knew he did not feel comfortable driving near the scene of his accident.  He cites his own deposition and

the depositions of Michael Bullard, a dispatch supervisor, and Robert Porter, a former Publix driver.

In the cited portion of Mr. Bullard's deposition, the witness discussed the May 2018 conversation he had with Plaintiff and Mr. Williams. That testimony shows Mr. Williams had some knowledge in May 2018 about Plaintiff's concerns with driving near the 285/400 interchange. But Mr. Williams's knowledge of Plaintiff's concerns in May 2018 is consistent with him learning of them in April 2018. So, Mr. Bullard's testimony and the Magistrate Judge's recommendation are consistent. Plaintiff also testified that he felt uncomfortable taking the route that took him near 285/400 interchange. (Dkt. 64 at 46:14–18.) His testimony does not show his supervisors knew of his reservations.

Mr. Porter's testimony, however, may contradict the supervisors' accounts.  Mr. Porter testified that "everybody in dispatch knows and knew that [Plaintiff] did not go over 400/285." (Dkt. 66 at 29:16–19.)  It is unclear that Plaintiff's supervisors are encompassed within the employees in dispatch to whom Mr. Porter was referring, especially given the supervisors' testimony that they were unaware.  In fact, his testimony appears to refer to the dispatchers, not supervisors.  Even so,

read in the light most favorable to Plaintiff, the Court considers that Plaintiff's supervisors knew Plaintiff was uncomfortable with the 285/400 interchange before April 2018.

Second, the Magistrate Judge found that Shannon Horne spoke to Plaintiff about the April 2018 incident and reminded him of the need to follow Defendant's process for taking the next-most-likely, on-time delivery. Plaintiff objects, claiming the conversation consisted only of Mr. Horne accusing Plaintiff of refusing a run. (*See* Dkt. 64 at 48:2–17.) Both Mr. Horne and Mr. Williams testified that Mr. Horne told Plaintiff in that conversation of the need to follow the policy. (*See* Dkts. 50 at 25:14–25; 55 at 31:3–8.) In Plaintiff's deposition, however, he described that conversation as Mr. Horne asking him why he refused a run and him responding that he did not refuse it. (Dkt. 64 at 48:2–24.) Plaintiff's deposition does not directly refute Mr. Horne's and Mr. Williams's accounts. But still, construed most favorably to Plaintiff, there is a dispute over whether Mr. Horne told Plaintiff about the need to follow the policy.

Third, the Magistrate Judge found that in May 2018, after Mr. Bullard and Plaintiff called Mr. Williams to discuss the run near the

285/400 interchange, Mr. Williams viewed Plaintiff's behavior as an impasse. (Dkt. 82 at 12.) The Magistrate Judge stated that Mr. Williams warned Plaintiff he could face discharge. (*Id.*) Plaintiff claims Mr. Williams only told him that he could face "ramifications," not discharge. The Court makes little of this objection — a ramification could be discharge. Still, when relevant, the Court holds in mind whatever distinction exists there.

Last, the Magistrate Judge found that Plaintiff failed to show another driver, Matthew Davidson, refused to take runs near a location in which he had been in an accident. Plaintiff claims Mr. Porter, the former driver, testified that Mr. Davidson refused to take runs in the area near his own accident. (Dkt. 66 at 78:6–15.) This objection speaks to the Magistrate Judge's finding that Mr. Davidson was not similarly situated to Plaintiff, an element of a prima facie unlawful termination claim. The Magistrate Judge also found, however, that another driver, Dick Reckon, was similarly situated to Plaintiff, meaning Plaintiff stated a prima facie case. If the Court accepts Mr. Reckon as similarly situated to Plaintiff, then the Court determining whether Mr. Davidson was similarly situated would not change the analysis either way. Since the Court below accepts

Mr. Reckon as similarly situated, the objection regarding Mr. Davidson is irrelevant.

## IV.   Discussion

Plaintiff claims Defendant fired him because of his race in violation of Title VII, 42 U.S.C. § 2000e-2(a).   With no direct evidence of discrimination, a court applies the three-part *McDonnell Douglas* test.[1] *See Benjamin v. SNF Holding Co.*, 602 F. App'x 758, 762 (11th Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).   Under this framework, a plaintiff must first make a prima facie case of discrimination.   *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).   If made, the defendant can provide legitimate, nondiscriminatory reasons for why it took the employment action.   *Id.* Upon the defendant showing these reasons, the plaintiff can show defendants' reasons are pretextual.   *Id.*

---

[1] A plaintiff can also survive summary judgment by presenting a "convincing mosaic" of intentional discrimination.   *See Smith v. Lockheed Martin Corp.,* 644 F.3d 1321, 1328 (11th Cir. 2001).   The Magistrate Judge found Plaintiff failed to do so and Plaintiff did not object to that finding.   This Court also does not think that Plaintiff has shown a convincing mosaic of intentional discrimination.

### A.   Prima Facie Case

To make a prima facie Title VII discrimination case, a plaintiff must show "(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220–21 (11th Cir. 2019). Defendant does not contest the first three factors, conceding that Plaintiff is part of a protected class; was subjected to an adverse employment action; and could perform the job.

The Eleventh Circuit discussed the standard for similarly situated employees in *Lewis*, 918 F.3d at 1226–28. The Eleventh Circuit stated that a plaintiff must show comparators that are similarly situated in "all material respects." *Id.* at 1227. Similarly situated comparators

> will have engaged in the same basic conduct (or misconduct) as the plaintiff; will have been subject to the same employment policy, guideline, or rule as the plaintiff; will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff; [and] will share the plaintiff's employment or disciplinary history.

*Id.* at 1227–28 (citations omitted).

The Magistrate Judge found Plaintiff offered one similarly situated comparator, Dick Reckon.  The Magistrate Judge looked to testimony showing Mr. Reckon would refuse to take assigned runs and management did not terminate him as a result. (Dkt. 64 at 82:4–7; 66 at 72:6–16.)  The Magistrate Judge reasoned Defendant employed Mr. Reckon; subjected him to the same policies as Plaintiff, including not being able to choose his second run; and allowed him to refuse an assigned run without facing adverse consequences.  As a result, Plaintiff and Mr. Reckon were similarly situated.  No party objects to this finding and the Court adopts it.[2]

## B.    Legitimate, Nondiscriminatory Reasons

The Magistrate Judge found Defendant presented a legitimate, nondiscriminatory reason for firing Plaintiff – his refusal to accept an assigned run on May 8, 2018.  The Magistrate Judge reasoned that Defendant prohibits employees from not following a supervisor's instructions.   Under Defendant's run-assignment policy, dispatchers

---

[2] Plaintiff also submitted other potential comparators.  This Court does not discuss those comparators because Plaintiff's claim proceeds regardless.

14

assigned drivers runs.  Defendant fired Plaintiff for breaching that policy.
Put another way, Mr. Williams told Plaintiff to take a run and Mr.
Williams thought Plaintiff refused to take that run.   Plaintiff claims
Defendant's explanation is "unworthy of credence," or illegitimate,
because he never refused to take a run.   At this stage, however, a
defendant's burden is only to proffer a legitimate, nondiscriminatory
reason, not to show that reason is why it fired the plaintiff.  *See Combs
v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) ("[T]o satisfy
this intermediate burden, the employer need only produce admissible
evidence which would allow the trier of fact rationally to conclude that
the employment decision had *not* been motivated by discriminatory
evidence." (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248,
254 (1981)).   Defendant has met that burden by offering Plaintiff's
insubordination as a reason.

### C.   Pretext

Since Defendant has articulated a legitimate, nondiscriminatory
reason for terminating Plaintiff, Plaintiff must show Defendant's reasons
are pretextual.   To establish pretext, a plaintiff must show the
defendant's given reasons were not the real reasons for the employment

15

action.  *See Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1290 (11th Cir. 2005).  In other words, a plaintiff must "cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact-finder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Combs*, 106 F.3d at 1538 (internal quotation marks and citation omitted). Plaintiff may do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 1543 (citing *Burdine*, 450 U.S. at 254.  Under the latter approach, Plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Jackson*, 405 F.3d at 1289 (quoting *Combs*, 106 F.3d at 1538).

Responding to Defendant's motion for summary judgment, Plaintiff offered four reasons why his purported termination for insubordination was pretextual: (1) Defendant required employees to attend a diversity training; (2) many African American drivers have resigned since

Plaintiff's termination; (3) Defendant tasked Mr. Williams with its "dirty work"; and (4) African American employees were afraid to disclose acts of racial bias for fear of retaliation.  The Magistrate Judge rejected these assertions as either unsupported or irrelevant.  She found Defendant's holding a diversity training does not show racial bias or that it fired Plaintiff because he is African American.  Neither do Plaintiff's claims that numerous African American drivers have resigned since his termination or that African American employees were allegedly afraid to disclose acts of racial bias.  And the Magistrate Judge found that Mr. Williams's alleged motivations do not show Defendant fired Plaintiff because of his race.

The Magistrate Judge also noted evidence that undercut Plaintiff's contention that Defendant fired him because of his race.  For instance, Plaintiff stated that he did not believe the dispatcher assigned him the run in May 2018 because of his race. (Dkt. 64 at 120:5–21.)  Plaintiff also testified that Defendant permits African-American drivers to circumvent the run-assignment policy without being fired.  (*Id.* at 88:7–89:3.)  The Magistrate Judge concluded that Plaintiff may have shown that some dispatchers would allow drivers to circumvent Defendant's modified

policy.  But that does not mean Defendant fired him because he is African American or that Defendant disciplines African American drivers more severely than other drivers.  Plaintiff did not specifically object to these findings.  The Court agrees with them and adopts them.

Plaintiff objects to the Magistrate Judge's findings.  He claims (1) he was not insubordinate; (2) the policy was never in effect; and (3) there were other disciplinary actions available short of termination. Plaintiff is either wrong or his objections do not show pretext.  First, Plaintiff claims he never refused the run in May 2018 and that he offered to make the delivery through another route.  But ultimately, whether Plaintiff refused the run does not matter.  The inquiry is whether Defendant believed Plaintiff had been insubordinate.  *See Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) ("We are not interested in whether the conclusion is a correct one, but whether it is an honest one."); *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("That the employee did not in fact engage in misconduct reported to the employer is irrelevant to the question whether the employer believed the employee had done wrong." (citing *Hawkins v. Ceco Corp.*, 883 F.2d 977, 980 n.2 (11th Cir. 1989))).  Mr. Williams testified that Plaintiff refused

the run.  Plaintiff presents no evidence that Mr. Williams did not believe Plaintiff had been insubordinate.  In fact, Plaintiff even admits that Mr. Williams told him there would be ramifications for not taking the run. Plaintiff's claim thus fails.

What is more, Plaintiff also has the obligation to show discrimination was the real reason Defendant fired him.  *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 (11th Cir. 2018) ("A reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." (citations and quotation marks omitted)).  Plaintiff has presented no such evidence in his objections.  The evidence submitted with his response to the motion for summary judgment also fails.  The Court rejects Plaintiff's objection.

Second, Plaintiff argues the updated policy was never in effect.  The Court finds scant evidence to support this claim.  Plaintiff points to Robert Porter's testimony, but he left six months before Defendant reasserted the policy.  Plaintiff also cites his own testimony in which he said drivers could choose their second run.  (Dkt. 64 at 54:6–9.)  But other evidence shows Defendant did not give drivers this authority.   Mr. Williams testified that the next-most-likely, on-time delivery policy was

in effect.  (Dkt. 55 at 43:12–17.)   And, Defendant's first requests for admission stated that the updated policy was posted in March 2018. Plaintiff did not respond to that request for admission and so they are considered admitted.  *See* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection."). The Court acknowledges Plaintiff tried to challenge this fact at summary judgment.  But, he had already admitted it by refusing to respond to the request for admission.  The Magistrate Judge properly found this fact admitted.  (Dkt. 82 at 8 n.5.)

Even if Plaintiff had raised an issue of material fact as to whether the policy was in effect, at bottom it does not matter.  The issue is whether Defendant fired Plaintiff because of his race.  Whether the policy was in effect is irrelevant as to whether Mr. Williams believed Plaintiff to be insubordinate.  Plaintiff admits that the dispatch office assigned him a run that he did not complete.  (Dkt. 64 at 99:10–14.)  He admits that he had a conversation with Mr. Williams and Mr. Bullard about that run. (*Id.*)  Mr. Williams testified that he found Plaintiff to refuse to take the run, and Plaintiff presents no evidence to show that reason to be false or

to show the actual reason was his race.  (Dkt. 55 at 79:10–20.)  The Court rejects Plaintiff's objection.

Last, Plaintiff claims Defendant could have taken other disciplinary steps short of firing him.  But it is not a court's job to weigh the wisdom of termination versus some other consequence.  *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair.  Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").  The Court rejects Plaintiff's objection.

Really, the Magistrate Judge put it just right: "The foundation of Plaintiff's pretext argument is that he was a hard-working, dependable employee who deserved the right to choose his preferred route, and that Defendant's arbitrary enforcement of its run-assignment policies led to his unlawful dismissal based on his race."  (Dkt. 82 at 29–30.)  Plaintiff has not shown that his termination and his race were connected.  *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) ("Put frankly, employers are free to fire their employees for a good reason, a bad reason, reason based on erroneous facts, or for no reason at all, as

long as its action is not for a discriminatory reason." (quotation marks and citation omitted)).  As a result, his claim fails.

## V.     Conclusion

The Court **OVERRULES** Plaintiff's Objections (Dkt. 86) and **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. 82). The Court **GRANTS** Defendant's Motion for Summary Judgment (Dkt. 45).

**SO ORDERED** this 15th day of September, 2020.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE